FRANK DOLPHUS, JR. *v.* STATE OF ARKANSAS

5472                               454 S. W. 2d 88

Opinion delivered May 25, 1970

*E. V. Trimble,* for appellant.

*Joe Purcell,* Attorney General; *Mike Barrier,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Frank Dolphus, Jr., appellant herein, was charged by an Information filed on December 4, 1968, with the crime of Grand Lar-

ceny, alleged to have occurred on November 22, 1968. On trial, Dolphus was found guilty, and after being found guilty, the jury determined sentence on the basis of the Habitual Criminal Statute, Sec. 43-2328 Ark. Stat. Ann. (1969 supplement), fixing his sentence as a fourth offender at twenty-six years and three months confinement in the penitentiary. From the judgment entered in accordance with these verdicts, appellant brings this appeal. No brief has been filed by the appellant, but his motion for a new trial, in effect, questions the substantiality of the evidence to sustain the conviction. It is also contended that the court erred in imposing a sentence upon Dolphus as an habitual criminal, it being asserted that this statute is unconstitutional in that Dolphus is being punished twice for previous offenses, and also, it constitutes cruel and unusual punishment. We proceed to a discussion of each point.

Mrs. Virginia Hammett testified that she and her husband had operated a grocery store for about 20 years in West Memphis; that on the morning of November 22, 1968, she opened the store a little after 7 o'clock A.M., her 20 year old son, Ed Hammett, being there with her. She said that about 7:50, a Negro man came to the store, went to the back, picked up a ten cent cake, and walked back to the cash register. She was behind the counter and he handed her a ten dollar bill. According to her testimony, as she opened the register and rang up the dime, the man said "No, wait a minute, I've got some change". She then gave back the ten dollar bill, and he slammed the change over the counter away from the register, which was still open. In the meantime, he had asked for a can of baby food, and her son had gone around the counter to obtain it. At the same time, Mrs. Hammett was "down on the floor picking up the change". The man then left the store. Mrs. Hammett stated that he was the first customer for the day, and that no money had been taken in at the time he walked in; the only money in the cash register was what she had placed there in opening the store for business that morning. She also

said that no suppliers had been paid prior to the man's coming into the store; that after he left, she discovered that $50.00 in $5.00 bills was missing from the cash register. At the trial, the witness identified Dolphus as the man in the store.

The son also identified Dolphus as the man who was present in the store, stating:

"Well, he had come in to buy—to purchase something from the store, and he brought it up to the counter, and asked my mother, Mrs. Hammett, where the tall thin man was, which meant my daddy who was sick, and then he asked for spinach and bacon baby food. I thought there was no such thing, but I thought maybe there was and started to look, then I thought, I know there is not, and I started back, and I guess I returned to the front quicker than he thought I would, and I saw him reach over the cash register and grab money out of the cash register and put it in his pocket."

On cross examination, young Hammett said he didn't actually see Dolphus with his hand in the cash register, but saw him reach over to the cash register. The witness followed Dolphus out of the store, and saw appellant drop something and stop to pick it up. Hammett stepped back into the grocery and told his mother to call the police. He then observed Dolphus get into a 1964 light blue Imperial, bearing a Tennessee license number, took down the license number, saw the car leave in the direction of Memphis, and reported the matter to a police patrol car. Hammett said there was another person also in the car, a woman. Dolphus was arrested by officers of the Memphis Police Department, and he voluntarily returned to Crittenden County. No evidence was offered by appellant. The testimony was sufficient to sustain the conviction. It is true that no one actually saw Dolphus put his hand into the cash register, but such proof was not necessary. We have held that participation in larceny may be shown by circumstances. *Puckett* v. *State* 194

Ark. 449, 108 S. W. 2d 468. This assignment of error contains no merit.

Nor do we find merit in the second contention. The record reflects that counsel for the state and counsel for the appellant stipulated that Dolphus had previously been convicted of robbery in the State of Oklahoma, serving time in the Oklahoma penitentiary in 1952; that he had previously been convicted of the offense of larceny in 1956, serving time in the state penitentiary in Illinois, that he had also been previously convicted of the offense of attempted larceny of a building in 1964, serving a sentence in Jackson, Michigan.[1]

After finding appellant guilty of the current offense, the jury was instructed as to punishment for a fourth or subsequent conviction under the statute previously cited, and his sentence was fixed at 26 years and 3 months.[2] The same contention now made by appellant was made in the federal case of *Oliver* v. *United States of America* 290 F. 2d 255, where Oliver was convicted of a narcotics violation in 1959, but was sentenced on the basis of having also been convicted of a similar offense in 1941. The Circuit Court of Appeals (8th Circuit), in rejecting the contention, said:

"An application was thereafter filed by appellant, which was in effect a motion under 28 U. S. C. A. § 2255, challenging the validity of the heavier sentence to which he had been subjected from the existence of his 1941 conviction. The basis of his challenge was that the increased penalty provision invoked against him for a second offense violation of the narcotics statutes had been enacted after his 1941 conviction, and that its application to him therefore made it an ex post

---

[1] The reporter evidently inadvertently made an error in transcribing the Court's charge to the jury; in quoting the Court's recitation of the stipulation, the location of the Illinois penitentiary is shown as "Bernard" instead of "Menard", and the serving of the sentence at Jackson is shown as "Mississippi" instead of "Michigan".

[2] Under the statute, Dolphus could have received thirty-one years and six months.

facto law, in violation of Art. 1, § 9, cl. 3 of the Constitution. * * * *

"The trial court denied the § 2255 motion without a hearing and refused to allow appellant to proceed on appeal in forma pauperis, except to permit him to file a notice of appeal without payment of fee. He now seeks leave from us to prosecute his appeal in forma pauperis.

"The increased penalty imposed upon appellant under § 7237 (a) because of his 1941 conviction is not a punishment for that offense, but simply 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' (citing other cases) Appellant was not being made to pay an additional penalty for the violation he committed in 1941, but he was merely being given more severe punishment for what he had done in 1959, in that he had seen fit to engage in another narcotics offense after § 7237 (a) was enacted".

Nor can we agree that the penalty constitutes cruel and unusual punishment.

Affirmed.

FOGLEMAN, J., not participating.