The Honorable Mark Stodola Prosecuting Attorney Sixth Judicial District 122 South Broadway Little Rock, Arkansas 72201
Dear Mr. Stodola:
This is in response to your request for an opinion on several questions concerning Act 595 of 1995, which amends A.C.A. § 5-73-103 (Adv. Code Serv. 1994-95), the statute prohibiting certain felons from possessing firearms. Your questions relate to the "retroactive" application of the new act. In my opinion, setting out the relevant statute before and after the 1995 amendment will be helpful prior to setting out and answering your specific questions.
Before the adoption of Act 595 of 1995, A.C.A. § 5-73-103(a) (Adv. Code Serv. 1994-95), provided, with certain exceptions,[1] that "no person shall possess or own any firearm who has been . . . convicted of a felony. . . ." The statute also stated in subsection (b) that: "A determination by a jury or a court that a person committed a felony: (1) Shall constitute a conviction for purposes of subsection (a) of this section even though the court suspended imposition of sentence or placed the defendant on probation. . . ."
After the adoption of this provision, but prior to the enactment of Act 595 of 1995, the Arkansas Supreme Court decided the case of Irvin v.State, 301 Ark. 416, 784 S.W.2d 763 (1990), in which the court held that a conviction under the "Youthful Offender Alternative Service Act of 1975,"[2] which, according to that act should have been expunged at completion of the sentence, could not be used to support a felon in possession of a firearm charge. The court cited language of the "Youthful Offender Alternative Service Act," which provided that the expungement "completely exonerated [the defendant] of any criminal purpose" and that the "disposition shall not affect any civil right or liberties of said defendant." The court noted that the defendant was entitled by law to have had his conviction expunged, and even though the public officer charged with the "ministerial duty" to expunge the record did not do so, the conviction could not be used to support a felon in possession of a firearm charge.
In response to this decision, the Arkansas General Assembly enacted Act 595 of 1995, and amended A.C.A. § 5-73-103. See Act 595, section 5 (the emergency clause) (expressly stating the act's intent as being to "legislatively overrule" Irvin v. State).[3] The statute, as amended, became effective March 13, 1995. After the amendment, the statute still prohibits possession of firearms by certain felons, as set out above. The relevant portion of the amended statute is found in subsection (b), which now provides that:
 A determination by a jury or a court in circuit court that a person committed a felony shall constitute a conviction even though the person was placed on probation, received suspension of imposition or execution of sentence, had his conviction expunged pursuant to any act, or was entitled to have his conviction expunged pursuant to any act, except that a person who pleads guilty or nolo contendere or is found guilty of a felony in circuit court may lawfully possess a firearm only if his right to do so is subsequently restored by the Governor pursuant to either subsection (d)(1) or subsection (d)(2) of this section or is otherwise authorized pursuant to subsection (a) of this section.[4]
[Emphasis added.]
Your questions in light of the new act are as follows:
 (1) Is a felon in possession charge under § 5-73-103 appropriate for a person (who would otherwise be charged with carrying a weapon under the same statute)[5] who is found to be carrying a weapon after the effective date of Act 595 of 1995 (3/13/95), and who was, prior to the effective date of Act 595 of 1995 either:
(a) placed on probation for a felony offense; or
 (b) received suspended imposition or execution of sentence for a felony offense; or
 (c) had or was entitled to have his conviction expunged pursuant to any act for a felony offense, AND
 (d) who had not received any pardon or any restoration of the right to carry a firearm from the governor prior to his arrest on the current weapons possession arrest, AND
(e) who had no other lawful purpose or license to carry a weapon.
 (2) More specifically does Act 595 of 1995 retroactively (prior to 3/13/95) convert such previous probations, SISs or SESs (suspended executions of sentence), or expungements of felonies into "convictions" for purposes of charging one with felon in possession of a firearm for new offenses committed on or after 3/13/95?
 (3) If the answer to question 2 is "yes," does the act run afoul of the Ex Post Facto clause of the U.S. Constitution or of the state constitution or other state laws?
 (4) If the answer to "2" above is "no," must all underlying felonies be committed after the effective date of Act 595 of 1995 for such felony probation, SIS, expungements or convictions to be useable as the underlying felony conviction to support a new charge of felon is possession of a firearm under A.C.A. § 5-73-103 which is committed after the effective date of Act 595?
 (5) Regardless of the answer please opine as to the effective date of Act 595 in the various scenarios given.
It is my opinion that convictions occurring prior to the effective date of Act 595 of 1995 may be used as underlying felony convictions to support a felon in possession of a firearm charge where the possession of the firearm occurred after the effective date of the act and where such person's right to carry firearms has not been restored under A.C.A. §5-73-103(a), (d)(1), or (d)(2). It is in my opinion, in response to your first question, "appropriate" to charge such individuals with felon in possession of a firearm.
In my opinion the legislative intent to apply Act 595 to underlying felonies occurring prior to its effective date is clear. The act states that "a determination that a person committed a felony shall constitute a conviction even though the person was placed on probation, received
suspension of imposition or execution of sentence, had his conviction expunged pursuant to any act, or was entitled to have his conviction expunged under any act. . . ." If the legislature had intended this portion of the statute to operate prospectively only, it presumably would have employed the present tense in the language quoted above.
The only impact Act 595 has on the various scenarios set out in your first question is where the court suspended execution of sentence, or the defendant had the conviction expunged or was entitled to have his conviction expunged. The other "scenarios" set out in your first question (i.e., probation and suspended imposition of sentence), were already treated as convictions for purposes of A.C.A. § 5-73-103 before the adoption of Act 595 and there has been no controversy over this fact.See former A.C.A. § 5-73-103(b) (Adv. Code Serv. 1994-95). The previous statute, however, did not specifically state that convictions on which execution of sentence was suspended qualified as "convictions" for purposes of A.C.A. § 5-73-103 (although there can be little doubt that these were and are convictions, see Op. Att'y Gen. 91-425), and did not specifically state that expunged convictions were to be treated as convictions for purposes of A.C.A. § 5-73-103. The court in Irvin, absent any language to this effect, found that such expunged convictions were not "convictions" for purposes of § 5-73-103 and this is what prompted Act 595.
In my opinion Act 595 of 1995 authorizes the use of an underlying felony to support a felon in possession charge anytime there was an adjudicationof guilt on the underlying felony, assuming, of course that the right to carry a firearm has not been restored pursuant to either subsection (a) or (d) of § 5-73-103. This conclusion is supported by the new language of Act 595 wherein it states that ". . . a person who pleads guilty or nolo contendere or is found guilty of a felony in circuit court may lawfully possess a firearm only if his right to do so is subsequently restored by the Governor pursuant to either subsection (d)(1) or subsection (d)(2) of this section or is otherwise authorized pursuant to section (a) of this section." Emphasis added. In my opinion, therefore, felony convictions where the defendant was placed on probation, received suspended imposition or execution of sentence, had his conviction expunged, or was entitled to have his conviction expunged, are, since March 13, 1995, all treated as "convictions" for purposes of A.C.A. § 5-73-103, even though they occurred prior to the effective date of Act 595.[6]
In specific response to your second question, it can be debated whether the conclusion reached above means that Act 595 is being applied "retroactively" in the technical legal meaning of this term. It has been stated that ". . . a statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date." Sutherland Stat. Const. § 41.01 at 338 (5th Ed.) See also State v. Hall, 301 N.W. 2d 729 (Iowa 1981) (new felon in possession statute was not impermissibly retroactive even though it counted, as an element of the crime, prior felonies for which civil rights had been restored).[7] The act does not "do" anything to these previous dispositions; it does not "convert" them into convictions as your question suggests. It merely punishes future conduct (possessing a firearm) based upon the existence of prior felonies. This is exactly what the legislature did in 1975 when it first enacted the felon in possession statute, at a time when felons were not prohibited from possessing firearms. The constitutionality of that action was expressly upheld inFinley v. State, 282 Ark. 146, 666 S.W.2d 701 (1984), where the court stated that "there can hardly be any doubt about the validity of the statute." Finley, supra at 148.
The Finley case is of relevance in addressing your third question, which involves whether the use of felonies committed prior to the effective date of Act 595 to support a new felon in possession of a firearm charge would violate the "ex post facto clause" of the United States or Arkansas Constitutions. See United States Constitution, art. 1, § 10, and Arkansas Constitution, art. 2, § 17. The court in Finley expressly upheld the 1975 felon in possession of a firearm statute against an ex post facto challenge. The defendant argued that the statute imposed an additional punishment upon an offense committed before the effective date of the act. (The defendant was convicted of a felony in 1971.) The court relied on previous decisions upholding habitual offender statutes against similar challenges, wherein it stated that the enhanced penalty "`is not for the first or second offense, but is for the third offense, which is considered as aggravated by reason of the preceding offenses.'" Id. at 148, quoting Sims v. State, 262 Ark. 288, 556 S.W.2d 141 (1977). The court defended its ruling, stating that to rule otherwise would render the legislature "powerless to prohibit even known and dangerous convicted criminals from carrying firearms, simply because their crimes had been committed before the lawmakers decided to take action." Id. at 148.
In my opinion a similar conclusion would be reached with respect to the operation of Act 595. The only difference in the analysis is that Act 595 applies to a smaller group of felons than did the 1975 act. The 1975 act prohibited most all persons with felony convictions at the time of the passage of the 1975 act from possessing firearms, even though these felons could, and some probably did, lawfully possess them prior to the effective date of the 1975 act. In relevant part, Act 595 similarly prohibits a certain class of felons (i.e., those with felony convictions who had their convictions expunged, or who were entitled to have their convictions expunged) from possessing firearms, even though these felons could, and some probably did, lawfully possess them under Irvin v. State
prior to the effective date of Act 595. In my opinion therefore, the Arkansas Supreme Court would similarly uphold Act 595 of 1995 against a ex post facto challenge.
In light of the conclusions reached above, an answer to your fourth question is unnecessary.
In response to your fifth question, the "effective date" of Act 595 of 1995 is March 13, 1995. The act does not have varying effective dates in the different "scenarios" you have listed. In my opinion, all of the types of dispositions you have listed may be used to support a felon in possession of a firearm charge, as long as there was an adjudication of guilt in the underlying felony, the possession of the firearm occurred on or after March 13, 1995, and the defendant has not had his right to carry a firearm restored pursuant to either § 5-73-103(a) or (d).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Previous law allowed a felon to possess a firearm if the Governor granted a pardon specifically restoring the right, or if the Governor restored the right without granting a pardon upon the recommendation of the chief law enforcement officer of the felon's residence (as long as the underlying felony did not involve use of a weapon and occurred more than eight years ago). An exception was also made for any felon who is authorized to carry a firearm pursuant to authority of the United States Treasury Department. These exceptions are exactly the same after the effective date of Act 595 of 1995, except that the eight year time limitation for the underlying felony referenced above has been changed to three years.
[2] This act has since been repealed (see Act 548 of 1993, § 11), and its provisions substantially replaced by A.C.A. § 16-93-1207(b) (Cum. Supp. 1993).
[3] Because Irvin v. State has now been "legislatively overruled," the conclusions reached in Op. Att'y Gen. 94-080, issued by this office on April 1, 1994, concerning expungements and firearm possession (which conclusions were reached in reliance on Irvin v. State), are no longer accurate descriptions of the law on expunged convictions.
[4] Subsections (d)(1) and (d)(2) relate to the power of the Governor, and subsection (a) is the exception for persons who have been granted authority to carry firearms pursuant to the authority of the U.S. Treasury Department.
[5] I assume you mean to say under the same subchapter, as the offense of "carrying a weapon" is set out in a separate statute.See A.C.A. § 5-73-120.
[6] The analysis contained in Op. Att'y Gen. 94-080 with regard topardons is in my opinion still accurate. The specific pardoning power of the Governor, as granted in the Arkansas Constitution, is not subject to legislative override or control, as is the effect of a legislatively created expungement statute.
[7] In my opinion, additionally, because Act 595 is not truly "retroactive" it does not violate the separation of powers doctrine. Cf.Federal Express Corporation et al v. Skelton, 265 Ark. 187, 578 S.W. 2d 1
(1979) (holding a truly retroactive act which had the effect of annulling a supreme court decision unconstitutional on separation of powers grounds).